## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **TERRY L. OLIVER,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 1:11-cv-390-GZS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the grounds that the administrative law judge (i) should have found her found disabled pursuant to Rule 201.14 of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), (ii) improperly considered her part-time work in evaluating the opinions of treating providers that she was unable to work more than 20 hours per week, (iii) should have obtained medical expert hearing testimony to evaluate the medical issues that he ruled on in his decision, and (iv) failed to properly assess her severe impairments at Step 2 of the sequential evaluation process. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 14) at 8-18. I find no reversible error and, hence, recommend that the decision be affirmed.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 22, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of back pain, sleep apnea, heart problems, asthma, and obesity, Finding 3, Record at 15; that she retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), Finding 5, *id.*; that, considering her age (50 years old, defined as an individual closely approaching advanced age, on the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 18; and that she, therefore, was not disabled from July 1, 2009, her alleged disability onset date, through March 24, 2011, the date of the decision, Finding 11, *id.* at 18-19.[2]   The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner.   20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.   42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).   In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.   *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] The plaintiff is insured, for purposes of SSD benefits, through December 31, 2013.  *See* Finding 1, Record at 14; *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured . . .; however, eligibility for SSI benefits is not dependent on insured status.").

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.   20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.   The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.   *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

## A.  Grid Rule 201.14

The administrative law judge found the plaintiff not disabled pursuant to Grid Rule 202.14, which directs a finding of non-disability if a claimant (i) is limited to light work as a result of severe medically determinable impairments, (ii) is closely approaching advanced age, (iii) is a high school graduate or more, and (iv) has skilled or semiskilled previous work experience but no transferable skills.   *See* Record at 18; Grid Rule 202.14.

The plaintiff argues that the administrative law judge erred in not invoking Grid Rule 201.14, which directs a finding of disabled when an individual meets all of the above criteria with one change: that he or she is limited to sedentary work as a result of severe medically determinable impairments.   *See* Statement of Errors at 8; Grid Rule 201.14.   This argument, however, hinges on the success of the plaintiff's second ground for appeal: that the administrative law judge erred in rejecting the RFC opinion of treating provider Karyn L. Woelflein, M.D.   *See* Statement of Errors at 8-15.[3]   For the reasons that follow, I find that the

---

[3] In her statement of errors, the plaintiff also challenged the administrative law judge's rejection of an RFC opinion of Emma Ansara, N.P.   *See* Statement of Errors at 14-15.   However, at oral argument, her counsel stated that he was not pressing this point.

administrative law judge committed no reversible error in declining to adopt that opinion.  Thus, he did not err in failing to rely on Grid Rule 201.14.

### B.  Treating Provider RFC Opinion

Administrative law judges typically rely on expert opinions concerning a claimant's RFC; as laypeople, they are not competent to make such assessments unless they can be made as a matter of common sense.  *See, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record.").

The record in this case contained four expert RFC opinions, two from Disability Determination Services ("DDS") non-examining consultants, Richard T. Chamberlin, M.D., and Donald Trumbull, M.D., and two from the plaintiff's treating providers, Dr. Woelflein and Nurse Practitioner Ansara.

In an opinion dated July 2, 2009, in which he took into account the plaintiff's obstructive sleep apnea, extreme obesity, atrial fibrillation, asthma, and back pain, *see* Record at 488, 495, Dr. Chamberlin found that she could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday, and that she had no limitations on her ability to push and/or pull, *see id*. at 489.  This was consistent with a capacity for light work.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.").

However, Dr. Chamberlin found that the plaintiff's obesity, obstructive sleep apnea, and chronic low back pain also imposed postural limitations: the plaintiff could never climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. *See* Record at 490. He further found that the plaintiff had to avoid pulmonary irritants and unprotected heights. *See id*. at 492.

In an opinion dated December 15, 2009, Dr. Trumbull indicated that none of the plaintiff's medical conditions, including her heart condition, back condition, asthma, and sleep apnea, was severe and, hence, that she had not established the existence of any physical restrictions. *See id*. at 510-17.

Dr. Woelflein, of Medical Rehabilitation Associates, provided an RFC opinion dated January 26, 2011, based on her treatment of the plaintiff for carpal tunnel syndrome, low back pain, and trochanteric bursitis. *See id*. at 701, 705. She indicated that the plaintiff was capable of the exertional demands of sedentary work, *see id*. at 704, but probably could not (i) maintain regular attendance and be punctual within customary and usually strict tolerances, (ii) consistently complete a normal work day and work week without interruptions from physically based symptoms, or (iii) perform at a consistent pace without more than the minimum number and length of required rest periods, *see id*. at 702. She expected that the plaintiff's impairments or treatment would cause her to be absent from work more than four days per month and stated that the plaintiff was restricted to part-time work not to exceed four to five hours per shift or 20 hours per week, with no lifting, bending, stooping, or twisting. *See id*.

Dr. Woelflein also assessed a number of postural limitations, including a restriction against sitting continuously for more than 15 minutes or standing continuously for more than 45 minutes, a need to freely alternate positions between sitting and standing, and a need to avoid

5

working in a stooped position or bending to lift objects off of the floor.  *See id*. at 703.  She also

assessed upper extremity restrictions, including a need to avoid vibratory equipment and

repetitive use of the hands for gross motor function activities, keyboarding, or writing.  *See id*.

She assessed environmental restrictions, including a need to avoid ladders and scaffolds.  *See id*.[4]

The administrative law judge rejected Dr. Woelflein's RFC opinion on the bases that:

> The [plaintiff's] daily activities, in combination with working 20-25 hours in a
> medium exertional occupation, are in complete contrast to Dr. Woelflein's
> opinion, rendering it less credible.  The doctor's own reports fail to reveal the type
> of significant clinical and laboratory abnormalities one would expect if the
> [plaintiff] were in fact disabled, and the doctor did not specifically address this
> weakness.  The doctor apparently relied quite heavily on the subjective report of
> symptoms and limitations provided by the [plaintiff], and seemed to uncritically
> accept as true most, if not all, of what the [plaintiff] reported.  Yet, as explained
> elsewhere in this decision, there exist good reasons for questioning the reliability
> of the [plaintiff's] subjective complaints.  Moreover, it is not clear that Dr.
> Woelflein is familiar with SSA [Social Security Administration] standards
> regarding the disability evaluation.

*Id*. at 17.

The plaintiff attacks each of these rationales for discrediting that opinion, arguing that:

1.      The administrative law judge, as a layperson, was not qualified to judge that Dr.

Woelflein's opinion lacked objective evidence.  *See* Statement of Errors at 9.

2.      Dr. Woelflein's notes did reveal abnormal findings on examination, for example,

tight muscles and pain on palpation, restricted movement, a positive straight leg test on the right,

and an EMG test establishing the existence of median neuropathy consistent with carpal tunnel

syndrome.  *See id*. at 9-10.

3.      While the plaintiff had indeed been working part-time, she testified that the work

caused severe pain and shortness of breath and that she had to rest at times during her part-time

shift.  *See id*. at 11.  She also stated that other people completed the household tasks that she was

---

[4] I have not summarized the contents of Nurse Practitioner Ansara's January 17, 2011, RFC opinion, the rejection of
which the plaintiff no longer challenges.

6

unable to perform and that she continued to work because she needed to support her family.  *See id*.  Nothing in the record appears to contradict Dr. Woelflein's opinion concerning the plaintiff's part-time work limitation and, to the extent there is any contradiction, it is attributable to the plaintiff's need to work to support her household.  *See id*. at 12.

4.     The administrative law judge wrongly found Dr. Woelflein's limitations in "complete contrast" with the plaintiff's work and other daily activities.  *See id*. at 13.  For example, the plaintiff's exercise attempts were strongly recommended by at least one doctor, and a notation in a medical record that she had moved furniture is not indicative of an ability to perform such movements on a routine basis.  *See id*. at 12.

5.     The administrative law judge stated, without support from the medical record or any medical expert, that the plaintiff should have had no need to seek out specialists for back pain and that Dr. Woelflein appeared not to understand the requirements for Social Security disability.  *See id*. at 13-14.

The plaintiff suggests that, rather than receiving no weight, the Woelflein RFC opinion should have been given controlling weight.  *See id*. at 13.

The commissioner's regulations promise that controlling weight will be given to the opinion of a treatment provider "[i]f [the commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]"  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

However, as counsel for the commissioner noted at oral argument, the opinion of a treating source that a claimant can work only part-time is not a "medical opinion" to which

7

controlling weight can be given, but rather an opinion as to her RFC, an issue reserved to the commissioner.  *See id*. §§ 404.1527(e)(2)-(3), 416.927(e)(2)-(3); *Hallock v. Astrue*, No. 2:10-cv-374-DBH, 2011 WL 4458978, at *6 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Oct. 12, 2011). Even with respect to issues reserved to the commissioner, such as RFC, an administrative law judge must supply "good reasons" for discounting the opinion of a treating source.  *See, e.g.,* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("[The commissioner] will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

The administrative law judge met this standard in rejecting the Woelflein opinion, both as to the plaintiff's asserted limitation to part-time work and her RFC.  Most significantly, he supportably judged the plaintiff's part-time work and other activities inconsistent with the Woelflein opinion.  For example, whereas Dr. Woelflein found the plaintiff capable of working no more than 20 hours a week in a sedentary exertional capacity with restrictions that included no lifting, the plaintiff testified that she was working 20 to 25 hours a week as a CNA (Certified Nursing Assistant) and lifting as much as 170 pounds when assisting a patient to stand and pivot. *Compare* Record at 702, 704 *with id*. at 32.  The plaintiff also took care of her mother, who suffered from Alzheimer's disease, *see id*. at 38, 481, and reported to cardiologist Robert Bender,

8

D.O., that she was able to walk up to one mile on a flat surface as of July 1, 2009, *see id*. at 503, and was walking on a regular basis three times daily as of July 1, 2010, two weeks after gastric bypass surgery, *see id*. at 639-40.

Although the plaintiff testified, in effect, that she was working beyond her capacity as a result of financial need, *see, e.g., id*. at 38, 41 (part-time job caused plaintiff pain and shortness of breath, but she did it to pay bills), the administrative law judge was not obliged to credit that testimony.

Further, the administrative law judge supportably found that Dr. Woelflein's own reports did not "reveal the type of significant clinical and laboratory abnormalities one would expect if the [plaintiff] were in fact disabled[.]" *Id*. at 17. While Dr. Woelflein or her associates did find abnormalities such as tight muscles and pain and tenderness on palpation of the plaintiff's spine and greater trochanters (hips) and a positive straight leg raise on the right, *see id*. at 484, 487, 559, an MRI study of the plaintiff's lumbar spine revealed no herniations or compromise of exiting or traversing nerve roots, *see id*. at 328, 484 ("normal lumbosacral spine"). And, while the plaintiff did have an abnormal EMG test in February 2010, it revealed "mild focal medial neuropathy at the wrist consistent with carpal tunnel syndrome." *Id*. at 568. *See also id*. at 571 (diagnosis of "[m]ild right carpal tunnel syndrome").

The administrative law judge committed no error in making these observations without the aid of a medical expert. He did what he was tasked to do: resolve conflicts in the record concerning the plaintiff's RFC. *See, e.g., Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6 n.5 (D. Me. Jan. 17, 2011) (rec. dec., *aff'd* Feb. 22, 2011) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is

perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes.") (citations omitted).

### C. Lack of Medical Expert at Hearing

The plaintiff next faults the administrative law judge for declining to call a medical expert, Peter Webber, M.D., who had been scheduled to testify at her hearing. *See* Statement of Errors at 15-17. She argues that the administrative law judge's reliance on the RFC opinions of Drs. Chamberlin and Trumbull was misplaced in that (i) "the opinions of both consultants were issued before the addition of a considerable amount of medical treatment evidence to the file, including medical source statements from Dr. Woelflein and FNP Ansara regarding the Plaintiff's abilities." *Id*. at 16. She adds that the Chamberlin and Trumbull opinions should have been given little to no weight in that they were contradicted by the opinions of Dr. Woelflein and the findings of the plaintiff's other specialists, Dr. Maureen Wood (pulmonologist), Drs. Paul Sweeney and Robert Bender (cardiologists), and Dr. Jamie Loggins (bariatric surgeon). *See id*. at 17.

As noted above, the administrative law judge supportably rejected the Woelflein RFC opinion, and the plaintiff withdrew her challenge to his rejection of the Ansara RFC opinion. It is unlikely that reviewing either opinion would have swayed Dr. Chamberlin or Dr. Trumbull to alter his RFC opinion. The addition of the Woelflein and Ansara RFC opinions to the record, hence, does not undercut the validity of the Chamberlin and Trumbull opinions. Moreover, as counsel for the commissioner suggested at oral argument, Dr. Chamberlin had access to progress notes reflecting the plaintiff's visits to Dr. Woelflein or her associates through March 10, 2009,

and Dr. Trumbull had access to such notes through June 30, 2009.  *See* Record at 479-87, 495, 517.  As he argued, notes of the plaintiff's more recent visits to Dr. Woelflein through November 23, 2010, do not reflect a significant difference in her condition.  *Compare id*. at 479-87 *with id*. at 558-60.

Turning to the plaintiff's next point, she provides no explanation as to how the progress notes of Drs. Wood, Sweeney, Bender, or Loggins undermine reliance on the RFC opinions of Drs. Chamberlin and Trumbull.  *See id*.  As counsel for the commissioner contended at oral argument, her argument is sufficiently undeveloped as to be waived.  *See, e.g., Crowe v. Bolduc*, 215 F. Supp.2d 233, 238 (D. Me. 2002), *aff'd*, 334 F.3d 124 (1st Cir. 2003); *Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990).  In any event, as counsel further argued, even if the point were not waived, the plaintiff falls short of demonstrating how the progress notes at issue undermine reliance on the RFC opinions of Drs. Chamberlin and Trumbull, both of whom had access to at least some of those notes.

The plaintiff having fallen short of demonstrating that the administrative law judge's reliance on the Trumbull and Chamberlin RFC opinions was misplaced, she fails to show that he abused his discretion in declining to call Dr. Webber to testify at her hearing.  *See, e.g., Allaire v. Astrue*, Civil No. 08-375-P-H, 2009 WL 3336107, at *7 (D. Me. Oct. 13, 2009) (rec. dec., *aff'd* Nov. 10, 2009) ("As this court has said many times, whether to consult a medical expert at the hearing is a matter of the commissioner's discretion, and the failure to do so will not provide a basis for remand.").

### D.  Failure To Find Severe Impairment of Carpal Tunnel Syndrome

The plaintiff finally seeks remand on the basis that the administrative law judge erred in failing to find a severe impairment of carpal tunnel syndrome and take into account resulting

limitations reflected in Dr. Woelflein's RFC opinion, which included limitations against repetitive gross motor function, keyboarding, and writing. *See* Statement of Errors at 17-18.

The plaintiff correctly notes that the administrative law judge did not even discuss whether or not the plaintiff's carpal tunnel syndrome was a severe impairment. *See id.*; Finding 3, Record at 15. This was error. Yet, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue,* Civil No. 09-220-B-W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010).

As the plaintiff's counsel conceded at oral argument, the only medical expert RFC opinion of record finding limitations attributable to carpal tunnel syndrome is that of Dr. Woelflein. Because, as noted above, the administrative law judge supportably rejected the Woelflein RFC opinion, and the plaintiff has not demonstrated that his reliance on the Trumbull and Chamberlin RFC opinions was misplaced, she falls short of showing that the error in failing to consider whether carpal tunnel syndrome was a severe impairment was outcome-determinative. Beyond this, as counsel for the commissioner pointed out at oral argument, it is not clear from Dr. Woelflein's progress notes that the condition was "severe[,]" Dr. Woelflein having indicated that the plaintiff had "mild" right-sided carpal tunnel syndrome. *See* Record at 571. Raw medical evidence showing a "mild" condition does not, in itself, carry a plaintiff's Step 2 burden of demonstrating the existence of a severe impairment. *See, e.g., LaBonte v. Astrue*, Civil No. 09-358-P-S, 2010 WL 2024895, at *2 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 17, 2010) (medical evidence showing "mild" changes and pathology did not meet claimant's Step 2 burden of demonstrating the existence of a severe impairment).

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be

**AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of June, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge